## A04A1972. CLANTON v. THE STATE.
### (609 SE2d 761)

Phipps, Judge.

A jury convicted Robert Gene Clanton of child molestation. He challenges evidentiary rulings on appeal, but he has not shown any reversible error. Therefore, we affirm.

The evidence showed that one day in June 1997, six-year-old J. C. complained to Clanton's sister, with whom both J. C. and Clanton were living temporarily, that earlier that week, "[Clanton] hurt my pee-pee. . . . [W]hen I go[ ] to the bathroom, it hurts and burns." In explaining what had happened, J. C. repeatedly said that Clanton had put "his pee-pee inside of hers and jumped up and down." That evening, J. C. was interviewed by a sheriff's office investigator. According to the investigator, J. C. stated that Clanton had "put his thing that he pees with where she pees and jumped up and down." The state also produced evidence that around the time of the incident, J. C. had told Clanton's ten-year-old nephew that Clanton had pulled down her pants and his own pants, then had gotten on top of her and begun "jumping up and down."

About two days after the incident, J. C. described it to her mother. J. C.'s mother testified that she and J. C. were sitting on the sofa watching television. J. C.'s younger brother, who was physically and mentally disabled, lay across J. C.'s lap and started "humping up and down." J. C. remarked to her mother, "[T]hat's just like [Clanton] did."

Around the time of the incident, Clanton owned pornographic magazines, which were introduced in evidence.

1. Clanton contests admission of the pornographic magazines as irrelevant. But because no objection was made on that basis, this claim of error was waived.[1]

2. Clanton contends that the trial court erred in excluding testimony that he claims would have shown that J. C. had observed her mother engaging in sexual intercourse. He argues that that observation explained J. C.'s knowledge of the act of which she was accusing him. Clanton proffered the following testimony of his sister.

Q: Have you ever personally observed, personally observed, [J. C.] observing [her mother] with another man?
A: Yes.
Q: When was that?
A: . . . [J. C.] was about three and a half, four years old, and [her mother] just had the baby, [Z. C.]. I babysitted for [J. C.'s mother]. . . .

---

[1] See *Pennymon v. State*, 261 Ga. App. 450, 453 (4) (582 SE2d 582) (2003).

Q: Did you observe — how do you know that there was conduct between [J. C.'s mother] —
A: I seen it.
Q: What did you see?
A: I seen [J. C.'s mother] on her back on her stomach like this (indicating), up on a pillow, and [her husband] was on top of her. . . .
Q: Where was [J. C.]?
A: In the middle of the hall, playing.
Q: Was [J. C.] able to see completely what was going on?
A: Oh, yes, there was no door there. They had took the door off. One of the hinges come off, so they just took it off.
Q: Now, personally and at other times, did you observe that?
A: No, just that once.

The trial court determined that the incident was part of the child's sexual history. "Absent a showing of relevance, evidence of a child's past sexual history, including acts committed by persons other than the accused, is inadmissible."[2] "Evidence is relevant if it logically tends to prove, disprove, or shed light upon any material fact at issue in a case."[3] Evidence that is not relevant should be excluded.[4] This court reviews a trial court's exclusion of evidence for abuse of discretion.[5]

Clanton claims that the evidence showed that J. C.'s allegation stemmed from her observation of adults engaging in sexual intercourse. But the proffered testimony did not show whether J. C., while playing in the hall, focused on the sexual activity or merely glanced in that direction. Even assuming that J. C. noticed the sexual activity, the proffered testimony did not show that the young child, then three-and-a-half or four years old, retained any memory of it for approximately the next three years. Nothing in the record showed that J. C. ever mentioned seeing her mother engaged in any sexual activity or related in any way that one episode to what she later described as someone "put[ting] his thing that he pees with where she pees and jump[ing] up and down." Rather, the evidence showed that when J. C. saw similar behavior after her encounter with Clanton, she volunteered, "that's just like [Clanton] did." We conclude that,

---

[2] (Citation and punctuation omitted.) *McGarity v. State*, 224 Ga. App. 302, 303-304 (1) (480 SE2d 319) (1997).

[3] (Footnote omitted.) *Marshall v. State*, 275 Ga. 740, 742 (5) (571 SE2d 761) (2002).

[4] OCGA § 24-2-1; *Hathcock v. State*, 214 Ga. App. 188, 191 (7) (447 SE2d 104) (1994).

[5] *Mooney v. State*, 266 Ga. App. 587, 592 (4) (597 SE2d 589) (2004).

under these circumstances and pretermitting whether the incident was part of the child's sexual history, the evidence sought to be admitted did not logically tend to prove Clanton's claim or any material fact at issue in this case. Accordingly, there was no reversible error in the exclusion of the evidence Clanton sought to have admitted.[6]

*Judgment affirmed. Johnson, P. J., and Smith, P. J., concur.*

DECIDED JANUARY 27, 2005.

*Lloyd W. Walker*, for appellant.
*William T. McBroom III, District Attorney, Daniel A. Hiatt, Assistant District Attorney*, for appellee.

---

[6] See *Hathcock*, supra; see also *Baker v. State*, 254 Ga. App. 19, 20-21 (2) (561 SE2d 185) (2002).