**SECOND DIVISION
MILLER, P. J.,
DOYLE and REESE, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**July 20, 2017**

# In the Court of Appeals of Georgia

A17A1058. FLOYD v. THE STATE.                              DO-036 C

DOYLE, Judge.

Following a jury trial, Arnold Alexander Floyd was convicted of two counts of armed robbery,[1] two counts of kidnapping,[2] burglary,[3] and two counts of first degree cruelty to children.[4] Floyd appeals the denial of his motion for new trial, arguing that the evidence was insufficient to support his convictions and that the trial court erred by requiring him to register as a sex offender. For the reasons that follow,

---

[1] OCGA § 16-8-41 (a).

[2] OCGA § 16-5-40 (a).

[3] OCGA § 16-7-1 (b).

[4] OCGA § 16-5-70 (b). Floyd was also convicted of two counts of aggravated assault (OCGA § 16-5-21 (b) (2)), but the trial court merged those counts into the two armed robbery convictions.

we reverse one of Floyd's convictions for kidnapping, affirm the remaining convictions, and remand the case for resentencing.

On appeal,

> [w]e view the evidence . . . in the light most favorable to the verdict[] and no longer presume the defendant is innocent. We do not weigh the evidence or decide the witnesses' credibility, but only determine if the evidence is sufficient to sustain the convictions. We construe the evidence and all reasonable inferences from the evidence most strongly in favor of the jury's verdict.[5]

So viewed, the record shows that on August 3, 2011, 16-year-old V. Y. was at home with her 12-year-old brother, P. Y. V. Y.'s boyfriend, Thaddeus Fowler, arrived at the house for a planned shopping trip, used the restroom, and then returned to the car to wait for V. Y. Shortly thereafter, Floyd entered the house, wielding a gun. V. Y., who was on the phone, asked Floyd who he was, and he told her at gunpoint "to shut up and give him the phone," directing her to go upstairs. V. Y. walked to her room, bypassing her brother's room where he was sleeping with the door closed, and Floyd demanded that she take off her clothes. After initially refusing, V. Y. took off

---

[5] (Citation and punctuation omitted.) *Frazier v. State*, 339 Ga. App. 405, 406 (793 SE2d 580) (2016). See also *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2

her shirt, but then began screaming for her brother when Floyd told her to go faster. Floyd then walked her to P. Y.'s bedroom, still wielding the gun.

P. Y. awoke, and Floyd grabbed the home phone and threw it downstairs, took P. Y.'s phone, and then pointed his gun at P. Y., who was sitting on the bed, and demanded that P. Y. put a video gaming system and shoes in a bag and open a safe located in the room. Floyd also grabbed P. Y.'s phone, some toy guns, and a poster from his wall. Next, Floyd forced the victims to stand at gunpoint before exiting the room. While Floyd was in P. Y.'s room with the victims, Fowler took a television and other items from V. Y.'s bedroom. The two men then left the house and drove away.

Floyd was charged with two counts of armed robbery, two counts of kidnapping, burglary, two counts of first degree cruelty to children, and two counts of aggravated assault.[6] Following a jury trial, he was found guilty on all counts and sentenced to prison. Floyd was also required to register as a sex offender as to his conviction for kidnapping P. Y. The trial court denied his subsequent motion for new trial, and this appeal followed.

---

[6] Fowler was charged with multiple crimes. He is not, however, a party to this appeal.

1. Floyd contends that the trial court erred by denying his motion for a directed verdict as to the charges of kidnapping, arguing that the State failed to prove the element of asportation beyond a reasonable doubt.

"A person commits the offense of kidnapping when such person abducts or steals away another person without lawful authority or warrant and holds such other person against his or her will."[7] "For the State to prove the essential element that the defendant has 'stolen away' or 'abducted' his alleged victim, it must show that an unlawful movement, or asportation, of the person has taken place against the victim's will."[8] The kidnapping statute[9] provides:

---

[7] OCGA § 16-5-40 (a).

[8] (Punctuation omitted.) *Ward v. State*, 324 Ga. App. 230, 232 (1) (749 SE2d 812) (2013).

[9] "In 2008, the Supreme Court of Georgia held that the asportation required to support a conviction for kidnapping must be more than 'slight,' and set forth a four-part test to aid in the determination of whether the asportation element was met: (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense. *Garza v. State*, 284 Ga. 696, 702 (1) (670 SE2d 73) (2008); see also *Bryant v. State*, 304 Ga. App. 755, 756-757 (1) n. 1 (697 SE2d 860) (2010). After the *Garza* decision, the legislature amended the kidnapping statute, effective July 1, 2009, to provide that slight movement is sufficient to establish kidnapping as long as the movement was not incidental to another offense. See *Hammond v. State*, 289 Ga. 142, 143 (710 SE2d

4

(1) For the offense of kidnapping to occur, slight movement shall be sufficient; provided, however, that any such slight movement of another person which occurs while in the commission of any other offense shall not constitute the offense of kidnapping if such movement is merely incidental to such other offense.

(2) Movement shall not be considered merely incidental to another offense if it: (A) Conceals or isolates the victim; (B) Makes the commission of the other offense substantially easier; (C) Lessens the risk of detection; or (D) Is for the purpose of avoiding apprehension.[10]

(a) *Count 4*. Count 4 charged Floyd with kidnapping V. Y. The evidence shows that Floyd took V. Y.'s phone at gunpoint and forced her to walk upstairs and into her bedroom, where he demanded that she remove her shirt. He then made her walk to P. Y.'s room, where Floyd had P. Y. gather multiple items that Floyd then took from the house. In doing so, Floyd moved V. Y. from one floor to another and ultimately removed her from her room and had her go into her brother's room, making it

---

124) (2011). The 2009 amendment is applicable here [because] the incident occurred in [August 2012]." *Ward*, 324 Ga. App. at 232, n.3.

[10] OCGA § 16-5-40 (b).

5

substantially easier for Floyd and Fowler to commit armed robbery including forcing P. Y. to gather various items in his room.[11]

"As a result, the movement of [V. Y.] was not merely incidental to any other charged offense, and [viewed in favor of the verdict,] the evidence was sufficient to establish the asportation element of the kidnapping charge."[12]

(b) *Count 3*. Count 3 charged Floyd with kidnapping P. Y. Floyd forced P. Y. to stand up from his bed, at gunpoint, and retrieve various items from around the room and place them in a bag for Floyd to take; P. Y. was never forced to leave his bedroom. Even viewed in favor of the verdict, the evidence shows that the movement simply was incidental to the crime of armed robbery; it did not conceal or isolate P. Y., it did not lessen the risk of detection, and it was not done for the purpose of avoiding apprehension. Thus, the State failed to establish the required element of asportation as to P. Y.[13] Accordingly, we reverse Floyd's conviction on Count 3.

---

[11] Again, while Floyd held the victims at gunpoint in P. Y.'s room, Fowler took various items from V. Y.'s room.

[12] *Ward*, 324 Ga. App. at 233 (1). See also *Ray v. State*, 338 Ga. App. 822, 826 (1) (a) (792 SE2d 421) (2016).

[13] See *Wilson v. State*, 318 Ga. App. 37, 40 (733 SE2d 345) (2012) (applying *Garza* factors); *Goolsby v. State*, 311 Ga. App. 650, 653-654 (1) (b) (718 SE2d 9) (2011) (applying *Garza* factors).

2. Floyd further contends that the evidence was insufficient to support the verdict and that the verdict was contrary to the evidence. Floyd offers no specific argument to support this enumeration, instead citing general legal propositions, including that

> to sustain a conviction in a felony case upon the testimony of an accomplice, there must be corroborating facts or circumstances, which, in themselves and independently of the testimony of the accomplice, directly connect the defendant with the crime, or lead to the inference that he is guilty, and are more than sufficient to merely cast on the defendant a grave suspicion of guilt.[14]

Viewed in favor of the verdict, the evidence, including the testimony of both victims, was sufficient to sustain Floyd's remaining convictions for kidnapping V. Y. (Count 4), two counts of armed robbery (Counts 1 and 2), burglary (Count 5), two counts of first degree cruelty to children (Counts 6 and 7), and two counts of aggravated assault (Counts 8 and 9).[15]

---

[14] (Citations and punctuation omitted.) *Bradford v. State*, 261 Ga. 833, 834 (1) (412 SE2d 534) (1992).

[15] See *Harris v. State,* 311 Ga. App. 336, 339-340 (1) (715 SE2d 757) (2011) (testimony of robbery victims was sufficient to corroborate accomplice's testimony).

3. Finally, Floyd argues that the trial court erred by requiring him to register as a sex offender as part of his conviction for kidnapping P. Y. In light of our reversal of Floyd's conviction for kidnapping P. Y.,[16] this enumeration is moot.

*Judgment affirmed in part and reversed in part, and case remanded for resentencing. Miller, P. J., and Reese, J., concur.*

---

[16] See Division 1 (b).