**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**February 5, 2014**

# In the Court of Appeals of Georgia

A13A2043. HUDSON v. THE STATE.

MCFADDEN, Judge.

Marreesse Hudson appeals his convictions of four counts of child molestation, two counts of cruelty to children in the third degree, aggravated assault and interference with a 911 call. He argues that he received ineffective assistance of counsel in that trial counsel failed to call certain witnesses; but as their testimony would have been merely cumulative, trial counsel was not ineffective. He asks us to overrule the longstanding exception to the sequestration rule which authorizes trial courts to allow lead investigators to remain in the courtroom; but as that exception is set out in decisions of our Supreme Court, we are without authority to overrule it. He complains that the trial court erred by failing to instruct the jury on mutual combat

and justification, but we agree with the trial court that the evidence does not require either charge. We therefore affirm.

1. *Facts.*

Viewed in the light most favorable to the verdict, *Cordy v. State*, 315 Ga. App. 849 (1) (729 SE2d 13) (2012) (citation omitted), the evidence shows that Hudson would watch his stepdaughters while their mother worked in the evenings. The younger victim, who was twelve at the time of trial, testified that after the girls bathed, they "would have to go in the room and [Hudson] would look between [their legs], and that's it." This began after the girl told Hudson that a boy at school tried to rape her.

At some point, the older victim, who was thirteen at the time of trial, told her mother that Hudson had "messed with" her and her sister. Mrs. Hudson confronted him. Hudson did not deny checking between the girls' legs but explained that one of the girls was "messing with" a boy next door. This led to a fight between Mr. and Mrs. Hudson. Hudson hit Mrs. Hudson in the face with a trophy, leaving a two- to three-inch gash under her eye that required sutures. When Mrs. Hudson said she was going to call 911, Hudson pulled the phone out of the wall.

Police responded to the domestic dispute at Hudson's house. They saw that Mrs. Hudson was covered in blood and that blood was on the wall, the bed, and the furniture. Hudson had a scratch on the top of his head that "wasn't that bad"; he did not even look like he had been in a fight.

Two days later, Hudson's stepdaughters gave statements at the child advocacy center, recounting how Hudson examined them. Those statements were recorded, and the DVDs were played for the jury. Days after they gave their recorded statements, the girls recanted. They told their mother that they had lied and that Hudson "never messed with [them] or looked between [their] legs." At trial the older victim testified that she told a police detective, her grandmother, her grandfather, her cousin, and her pastor that her recorded statement had been a lie. The younger victim also testified that she had lied when she was interviewed at the child advocacy center. She testified that she told her grandmother, her pastor and two other people she had lied. But she also testified that Hudson "checked" her, consistent with her statement at the child advocacy center and her initial statement to her mother.

2. *Trial counsel was not ineffective*.

Hudson argues that trial counsel was ineffective because she should have called the girls' pastor, their grandmother, and their grandfather to corroborate the girls'

3

testimony that they told these people they had lied. To prevail on his claim of ineffective assistance of counsel, Hudson must show both deficient performance by trial counsel and actual prejudice. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985). If Hudson "fails to meet his burden of proving either prong, then we do not need to examine the other prong." *Works v. State*, 301 Ga. App. 108, 114 (7) (686 SE2d 863) (2009) (citation omitted). Hudson cannot show that trial counsel's performance prejudiced him, so his claim of ineffective assistance of counsel fails.

Trial counsel's testimony at the hearing on the motion for new trial demonstrated that she made an informed, reasoned choice not to call these witnesses. She testified that, after reviewing the state's discovery, she made a strategic decision not to call these witnesses because the victims' "testimony would be the best source of that information." The victims' trial testimony included that they told their mother they had lied; that Hudson "never messed with [them] or looked between [their] legs," that they told the detective, their grandmother, their grandfather, their cousin, and their pastor that they had lied; and that they had lied during the interviews at the child advocacy center.

Hudson has not shown that the testimony of the girls' grandparents or pastor would have been anything other than merely cumulative. And failure to present merely cumulative evidence does not prejudice a defendant and therefore does not amount to ineffective assistance of counsel. *Wesley v. State*, 286 Ga. 355, 358 (3) (h) (689 SE2d 280) (2010); *Duran v. State*, 274 Ga. App. 876 (3) (619 SE2d 388) (2005). See also *Nichols v. State*, 257 Ga. 558, 558-559 (2) (a) (361 SE2d 486) (1987) (counsel's considered, strategic decision not to call witnesses who would have substantiated theory of self-defense was not ineffective because counsel determined their testimony would not have been beneficial or would have been merely cumulative); *Freeman v. State*, 269 Ga. App. 435, 438-439 (3) (a) (604 SE2d 280) (2004) (counsel's decision not to call molestation victim's therapist, to whom victim had recanted, was not ineffective assistance of counsel as counsel determined the testimony would be merely cumulative or harmful).

3. *The lead investigator could remain in the courtroom.*

Hudson argues that allowing the lead investigator to remain in the courtroom violated the rule of sequestration. Settled law authorizes such an exception to sequestration.

5

The trial court may allow an investigative officer to remain in the courtroom to assist the prosecutor in the orderly presentation of evidence. A trial court is vested with the discretion to make an exception to the sequestration rule for the chief investigating officer and the discretion will not be reversed on appeal unless abused.

*Sirmans v. State*, 301 Ga. App. 756, 759 (4) (688 SE2d 669) (2009) (citations omitted). Hudson does not argue that the trial court abused its discretion but instead argues that this exception to the sequestration rule should be abolished. But this exception was established long ago by our Supreme Court. See *Hardy v. State*, 245 Ga. 673, 674 (266 SE2d 489) (1980); *Spurlin v. State*, 222 Ga. 179, 180-181 (2) (149 SE2d 315) (1966). And "this [c]ourt has no authority to overrule or modify a decision made by the Supreme Court of Georgia, as the decisions of the Supreme Court shall bind all other courts as precedents." *Pak v. Georgia Dept. of Behavioral Health & Developmental Disabilities*, 317 Ga. App. 486, 488 (731 SE2d 384) (2012) (citations and punctuation omitted).

4. *The trial court did not err by refusing to charge the jury on mutual combat and justification*.

(a) *Mutual combat*.

"A charge on mutual combat generally is proper when there is evidence of a mutual intention or agreement to fight." *Pulley v. State*, 291 Ga. 330, 334 (3) (729 SE2d 338) (2012) (citations and punctuation omitted). Accord *Carreker v. State*, 273 Ga. 371, 372 (2) (541 SE2d 364) (2001) (mutual combat charge authorized where evidence showed "both parties intended to resolve their differences by fighting each other"). Here the evidence showed no such intention or agreement and therefore did not support a charge on mutual combat.

(b) *Justification*.

The defense of justification is established by statute.

A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force; however, . . . a person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony.

OCGA § 16-3-21 (a). Whether a charge on justification is warranted is for the trial court's discretion.

7

A prima facie case of justification requires a showing that the victim was the aggressor, that the victim assaulted the defendant, and that the defendant was honestly trying to defend himself. The trial court exercises its discretion in determining whether a defendant has made a prima facie showing, and we will not reverse that determination absent an abuse of discretion.

*Williams v. State*, 298 Ga. App. 151, 153 (679 SE2d 377) (2009) (citations and punctuation omitted). "If the amount of force used by a person is excessive, . . . it does not qualify as self-defense." *Howe v. State*, 322 Ga. App. 294, 297 (744 SE2d 818) (2013).

Hudson has not demonstrated that the trial court abused its discretion in determining he had not made a prima facie showing of justification. It is true that there was some evidence that Mrs. Hudson attacked first. But Hudson hit her in the face with a trophy, covering her in blood and splattering blood over the room. She required sutures; he did not even appear to have been in a fight. So Hudson has not shown that the trial court abused its discretion in determining that he had not made a prima facie case of self-defense. See *Brunson v. State*, 293 Ga. 226, 227-228 (2) (744 SE2d 695) (2013) (trial court did not err in determining that evidence did not warrant giving of self-defense charge where evidence showed that unarmed victim

8

moved toward defendant only after defendant threatened him with revolver and that victim attempted to point defendant's gun away from others).

*Judgment affirmed. Doyle, P. J., and Boggs, J., concur.*